ECF CASE
JUDGE CHIN

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

**J & J SPORTS PRODUCTIONS, INC.,** as Broadcast Licensee of the **May 5, 2007 DeLaHoya/Mayweather** Program
       Plaintiff,

 -against-

HAROLD C. GRAHAM, Individually, and as officer, director, shareholder and/or principal of REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL,

and

REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL
       Defendants.
-----------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW**
Civil Action No. 07-CV-08855
HON. DENNY CHIN

 Plaintiff submits the following in support of its request for an award of damages against the Defendants, HAROLD C. GRAHAM, Individually, and as officer, director, shareholder and/or principal of REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL, and REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL**.**

## FACTS

 The relevant facts can be briefly stated and are fully set forth in the accompanying exhibits and Plaintiff's underlying Complaint.  Plaintiff, J & J Sports Productions, Inc.,

commenced this action on October 12, 2007, alleging that the Defendants hereto knowingly and willfully violated the Communications Act of 1934, as amended, 47 U.S.C. §605 (1996). The Complaint, ECF document No. 1, alleges that the Defendants, unlawfully intercepted and exhibited the DeLaHoya/Mayweather pay-per-view boxing event on May 5, 2007 ( hereafter the "Program").

As part of its factual research, Plaintiff's Counsel conducted a search of the New York State Division of Alcoholic Beverage Control State Liquor Authority. The results show that Harold C. Graham, is Principal of Reflections Bar Lounge Inc. The Public Query results page is attached to the Attorney Affidavit as Exhibit 'B".

Copies of the Summons and Complaint were served on Defendants HAROLD C. GRAHAM, Individually, and as officer, director, shareholder and/or principal of REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL, and REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL on December 18, 2007 ECF document Nos. 3 and 4.

As the Complaint and the Affidavit of Plaintiff's President, Joseph Gagliardi, submitted simultaneously both reveal, Plaintiff owns the distribution rights to the May 5, 2007 program, which was broadcast either by closed circuit television or by encrypted satellite signal. For a fee, commercial establishments could legitimately receive an unscrambled signal, enabling them to view the program by contracting with the Plaintiff. However, through the use of methods that required the performance of some deliberate and willful act, potential purchasers, such as the Defendants herein, illegally obtained programs without paying the Plaintiff for the rights to exhibit said event.

In order to combat the serious erosion of market sales caused by such piracy, Plaintiff hired investigative agencies to retain independent auditors to visit various locales in the New York City area on the night of May 5, 2007, to see whether these establishments were intercepting and publicly displaying the Program without authorization from, or payment to, Plaintiff and its affiliates.

The auditors visited numerous locations where the Program was exhibited. Among the locations the auditors observed exhibiting the DeLaHoya/Mayweather match without authority to do so was that of the Defendants HAROLD C. GRAHAM, Individually, and as officer, director, shareholder and/or principal of REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL, and REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL. Defendants' display of the event was verified by independent auditor Keith Rauscher, attached to the Plaintiff's Affidavit as Exhibit C. The auditor entered the Defendant establishment without paying a cover charge and saw one television sets exhibiting a portion the encrypted broadcast to approximately 20 individuals in an establishment with a capacity of 100 people. The exhibition most likely led to an increased number of patrons and, thus, an increase in profits, all to the financial detriment of Plaintiff and its legitimate customers.

After proper service, the Defendants herein did not answer or otherwise appear in a timely manner, nor did they request an extension of time to file. Said Defendants are not infants or incompetents. Upon information and belief, the Defendants are not presently in the military service of the United States.

**NATURE OF DEFAULT**

Defendants' default must be deemed an admission of the facts alleged in the complaint.

Greyhound Exhibitgroup v. E.L.U.L. Realty Group, 973 F.2d 155 (2nd Cir. 1992). Plaintiff's complaint establishes the elements of liability required to state a claim under both 47 U.S.C. 553 and 47 U.S.C. 605. Under 553(a)(1) liability exists if a person intercepts or receives or assists in receiving any communication service over a cable system without authorization. Under 605(a) liability hinges on the interception of radio communications and its divulgence to any person. Defendants herein, by their default, have admitted that, without authorization from Plaintiff, they illegally intercepted the scrambled transmissions of the Program. Defendants have also admitted that knowingly and wilfully intercepting the programming, and offering it to patrons of the establishment for private financial gain or commercial advantage.

  Plaintiff, by contract, was granted the right to distribute the Program scheduled for May 5, 2007, via closed circuit television. Pursuant to the aforesaid contract, Plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to publicly exhibit the program to their patrons. Plaintiff expended substantial monies in consideration of the aforementioned agreement to transmit the said boxing match to those entities within the State of New York who had contracted for same with the Plaintiff for exhibition to their patrons.

  The Defendants and their agents, servants, workmen or employees, with full knowledge that said closed circuit program was not to be received and/or exhibited by entities unauthorized to do so, did, at the time of its transmission, exhibit the closed circuit program at their principal place of business willfully, and for purposes of direct or indirect commercial advantage or private financial gain and with the intent of willfully defrauding Plaintiff of revenue.

  The event in question originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Under Cablevision v. Sykes, 75 F.3d 123 (2nd Cir. 1996) piracy of a signal originating this way is a violation of 605(a).

Because Plaintiff distributed the event via closed circuit cable television, piracy of their signal is also a violation of 553(a)(1). Cablevision v. Sykes, 997 F.2d 998 (2nd Cir. 1993). There are multiple illegal methods of accessing programing. Splicing an additional coaxial cable line or redirecting a wireless signal, from an adjacent residence and onto a business establishment, commercial misuse of cable or satellite by registering same as a residence when it is in fact, a business or taking a lawfully obtained box or satellite receiver from a private residence and into a business. All these methods could permit Defendants to access programming unlawfully. [1] While Plaintiff is unable to determine the manner in which Defendants obtained the programing, it is logical to conclude that Defendants must have either used an illegal satellite receiver, misrepresented their business establishment as a residence or engaged in "mirroring" by taking a legitimate receiver from their home to their business establishment in order to intercept Plaintiff's broadcast. This establishes Defendant's liability under both 553 and 605. Entertainment by J&J v. Mama Zee, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

After trial Judge Chin of the Southern District of New York stated the following:

> Some courts considering similar facts have imposed damages based on a fixed amount per patron. See, e.g., *Garden City Boxing Club, Inc. v. Salcedo, 2005 U.S. Dist. LEXIS 26478, No. 04 Civ. 5027, 2005 WL 2898233 ( S.D.N.Y. Nov. 3, 2005)* ($300.00 per patron); *Time Warner Cable v. Goodies Luncheonette, Inc., 77 F. Supp. 2d 485 (S.D.N.Y 1999)* ($50.00 per patron). Others have awarded a flat sum. See, e.g., *Garden City Boxing Club, Inc. v. Guzman, 2005 U. S. Dist. LEXIS 7954, No. 03 Civ. 8776, 2005 WL 1153728 (S.D.N.Y Apr. 26, 2005 )*($5,000.00); *Kingvision Pay-Per-View, ltd. v. New Paradise Rest., 2000 U. S. Dist. LEXIS 8792, No. 99 Civ. 10020, 2000 WL 378053 (S.D.N.Y. Apr. 11, 2000)* ( $20,000). On motions for entry of default in cases involving this

---

[1] In addition, emerging technologies, such as broadband or internet broadcast as well as " slingbox" technology, which allows a consumer to literally sling programming from their personal home cable or satellite systems and into their computers, can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world.

>plaintiff and this fight I have awarded statutory damages of $5,000.00 for a violation of *Section 605 (e)(3)(C)(i)(II)* and an additional $5,000.00 for violations that were willful and for commercial gain. See, e.g. Garden City Boxing Club v. Rosa, No. 05 Civ. 6233 (DC); Garden City Boxing Club v. Ruiz, 05-Civ. 3408 (DC).
>
>Here, the commercial rights for the de la Hoya/Hopkins fight would have cost Luischia approximately $2,000.00. In addition, I find that, more likely than not, one of the reasons defendants exhibited the fight was to realize increased profits from the sale of food and beverages, which profits should be disgorged. Finally, plaintiff is entitled to an enhancement of damages due to my finding that the defendants' conduct was willful and for commercial gain, although I am mindful that defendants run a small business, their profit from exhibition of the fight was likely minimal, and, although the amount of damages should be an adequate deterrent, the violation is not so serious as to warrant putting the restaurant out of business. Accordingly, I find that an award of an additional $10,000.00 ( for a total of $12,000.00) is fair and just, in light of all the circumstances.

See Garden City Boxing Club, Inc., v. Luis Polanco and Luischia Restaurant Corp., 2006 U. S. Dist. LEXIS 5010 at *15-*17 (S.D.N.Y. February 7, 2006).

When a Defendant is liable under both sections of the Federal Communications Act, Plaintiff can recover under only one section. Time Warner v. Taco Rapido, 988 F. Supp. 107 (E.D.N.Y. 1997). Plaintiff elects to recover under 605(a). A claimant who has established liability under 605(a) may elect between actual or statutory damages under 605(e)(3)(C)(i). Plaintiff elects for statutory damages pursuant to 605(e)(3)(C)(i)(II). Under 605(e)(3)(C)(ii) enhanced damages are available where the violation was willful and was committed for direct or indirect commercial advantage or private financial gain. As the Defendants exhibited the event in a commercial establishment, Plaintiff has pleaded the elements to establish a willful violation. Entertainment by J&J v. Mama Zee, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

Congress, in its legislative wisdom, has decreed that substantial monetary damages be

available as a deterrent to future unlawful behavior.  Each decision to violate the law is a financial one.  A Defendant who believes he can violate the law with impunity and never pay for his misdeeds, will continue to do so.  Rampant piracy of events like the one in question will continue until Defendants realize it is just too expensive to keep stealing.  As long as Defendants can attract patrons by exhibiting these events, and the cost of doing so is low, they will continue to be pirates. While   Plaintiff has not submitted evidence of the exhibition of other events in this establishment,  for most defendants, once the technology or plan is in place to pirate these events, they do so again and again.  The Defendants' willful refusal to respond to the lawsuit hampers the Plaintiff  in demonstrating how the event was stolen and how many additional events have been stolen in a similar manner.  Defendants should not benefit from their refusal to participate in this lawsuit.

## DAMAGES

Pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), Defendants are indebted to Plaintiff for the unlawful exhibition for commercial advantage of the closed circuit television signal of the **DeLaHoya/Mayweather** boxing Event on May 5, 2007,   in the sum of up to $10,000.00 in the discretion of the Court.

In addition, pursuant to 47 U.S.C. §605(e)(3)(C)(ii) Plaintiff is entitled to an additional statutory damage amount of <u>up to</u> $100,000.00 in the discretion of the Court  for the intentional unlawful interception of the closed circuit television signal of the **DeLaHoya/Mayweather** boxing event on May 5, 2007.  Enhanced damages under this provision were awarded in the Southern District of New York  in <u>Kingvision v. Ruiz</u>, 2005 U.S. Dist. LEXIS 3856 (S.D.N.Y.) and <u>Garden City v. Guzman</u>, 2005 U.S. Dist. LEXIS 7954 (S.D.N.Y.) and <u>Cablevision v. Faschitti</u>, 1996. U.S. Dist. LEXIS 1212 (S.D.N.Y.), as well as <u>Kingvision v. Mi Palenque</u>, 04-cv-

6566.

The Court in <u>Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.</u>, 219 F. Supp. 2d 769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tx. 2002), noted that deterrence is one of the goals of 47 U.S.C. §605 and that to require the offending establishment to pay the price it would have paid had it legally contracted to exhibit the event "would do nothing to accomplish this objective of the statute." <u>Id.</u> at 776. The Court further addressed willfulness in its opinion, awarding enhanced damages:

> Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [defendant] in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain.

<u>Id.</u> at 776 (citations omitted). The Court noted that "willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements.'" <u>Cablevision Sys. N.Y. City Corp. v. Lokshin</u>, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 126, 83 L. Ed. 2d 523, 105 S. Ct. 613 at 613027 (1985)).

The Southern District of New York has held that "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distributions systems." <u>Time Warner Cable of New York City v. Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d 485 (S.D.N.Y. 1999).

Plaintiff urges that the maximum amount of statutory damages under 605(e)(3)(C)(i)(II), $10,000.00 be awarded in this case. Plaintiff further urges that substantial enhanced damages be added to it pursuant to 605(e)(3)(C)(ii) of <u>up to</u> $100,000.00. In deference to Plaintiff Counsel's

obligation to zealously represent its client, the prayer below includes a prayer for the full statutory amount available to the Plaintiff.

**FEES AND COSTS**

The Federal Communications Act provides that full costs, including attorney fees shall be awarded to an aggrieved party who prevails.  J & J Sports Productions, is an aggrieved party in this case because it had a proprietary interest in the intercepted communications.  <u>Garden City Boxing Club v. Ayisah</u>, 2004 U.S. Dist. 7687 (S.D.N.Y.)  Plaintiff has expended filing fees, service of process costs, attorney fees, pursuing this case. <u>Garden City Boxing Club v. Guzman</u>, 2005 U.S.Dist. LEXIS 7954 (S.D.N.Y.), <u>Kingvision v. Medrano</u>, 2004 U.S. Dist. LEXIS 13282 (S.D.N.Y.),  <u>Kingvision v. Recio</u>, 2003 U.S. Dist. LEXIS 10440 (S.D.N.Y.),  <u>Time Warner Cable v. Evans</u>, 2001 U.S. Dist. LEXIS 16402(S.D.N.Y.),  <u>Joe Hand Productions v. West</u>, 2000 U.S. Dist. LEXIS 15711 (W.D.N.Y.), <u>Main Event v. Batista</u>, 1999 U.S. Dist. LEXIS 2250, 1998 U.S. Dist. LEXIS 21492 (E.D.N.Y.).

**CONCLUSION**

Plaintiff is entitled to a default judgment against Defendants holding them liable for a sum, in the discretion of the court of <u>up to</u> the sum $110,000.00 for violation of 605(a).  Plaintiff is also entitled to full litigation costs including attorney fees, and post-judgment interest. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, there is no just reason for delay in these default judgments as the interest of justice require the issuance of judgment as requested without further delay.  The judgments requested herein are for a sum certain within the discretion of this court so no inquest is necessary.  Plaintiff prays that this Motion be heard on submission.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the

Defendants as follows:

**Against, HAROLD C. GRAHAM, Individually, and as officer, director, shareholder and/or principal of REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL,**

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, of up to TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of SIX HUNDRED SIXTY FIVE DOLLARS AND SIXTY TWO CENTS ($665.62)

**Against, REFLECTION BAR & LOUNGE INC. d/b/a REFLECTIONS BAR & LOUNGE a/k/a REFLECTIONS BAR AND GRILL,**

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, of up to TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of SIX HUNDRED SIXTY FIVE DOLLARS AND SIXTY TWO CENTS ($665.62)

Dated: January 4, 2008
Ellenville, NY 12428

/s/ Julie Cohen Lonstein
Julie Cohen Lonstein, Esq.
Bar Roll No. JL8512
Lonstein Law Office, P.C.
Attorneys for Plaintiff
1 Terrace Hill; PO Box 351
Ellenville, NY 12428
Telephone: 845-647-8500
Fax: 845-647-6277